FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 SEP 15 PM 1: 29

U.S. DISTRICT COURT
N.D. OF ALABAMA

ROBIN AMARO BRUNGART,          )
                               )
     Plaintiff                 )
                               )          CIVIL ACTION NO.
vs.                            )
                               )          98-AR-2558-S
BELLSOUTH TELECOMMUNICATIONS,  )
INC.,                          )
                               )
     Defendant.                )

ENTERED

SEP 15 1999

## MEMORANDUM OPINION

Presently before the court are cross-motions for summary
judgment.  Each side seeks judgment as a matter of law on all four
counts of the complaint. In other words, both parties are saying
that the case can be decided on undisputed facts. Counts one, two,
and three are claims under the Family and Medical Leave Act of 1993
("FMLA"), 29 U.S.C. §§ 2601 et seq. Count four is a claim under
§ 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.
§ 185.  For the reasons set forth below, defendant's motion is due
to be granted on all counts while plaintiff's motion is due to be
denied.

### Pertinent and Undisputed Facts

Plaintiff, Robin Amaro Brungart ("Mrs. Brungart"), began her
employment with defendant, BellSouth Telecommunications, Inc.



("BellSouth"), on February 11, 1991, in Florida.  In December of 1994, she went on a leave of absence pending transfer.  She was transferred to BellSouth's Birmingham location and began work there on September 23, 1996.  Her employment was covered by a collective bargaining agreement between BellSouth and her union, the Communication Workers of America.

When Mrs. Brungart resumed working for BellSouth in Birmingham, her supervisor was Judy Cardin. In November of 1996, Peggy Thompson became her acting supervisor.  On December 2, 1996, Mrs. Brungart's mother went into the hospital for emergency surgery.  As a result, Mrs. Brungart told Ms. Thompson that she wanted to take FMLA leave immediately.  Ms. Thompson and Ms. Cardin gave Mrs. Brungart the telephone number of the FMLA administrator.  Mrs. Brungart called the FMLA administrator, who faxed Mrs. Brungart an application which she filled out and submitted that day.

Later that same day, Mrs. Brungart called Ms. Thompson to let her know of her mother's status, but was unable to reach Ms. Thompson.  When Ms. Thompson returned the call, Mrs. Brungart told her that she would be off from work for the next week to ten days because of her mother's condition.  Ms. Thompson told Mrs. Brungart to keep in touch every few days to let the office know how her mother was doing.

2

Acting upon Ms. Thompson's request, Mrs. Brungart periodically reported in.  On December 10, 1996, Ms. Thompson called Mrs. Brungart and told her that she had been listed as a "no report" for failure to call in every day.  Mrs. Brungart responded that Ms. Thompson had not told her to call in every day.

When Mrs. Brungart returned to work sometime around December 16, 1996, she was given a written reprimand for her absences.  On January 16, 1997, the plaintiff received notice from the FMLA administrator that her December 2, 1996, request for FMLA leave had been denied because she did not meet the eligibility requirement as established by the FMLA, namely, that she had not worked 1,250 hours or more in the twelve months preceding her request for FMLA leave.

In February of 1997, Mrs. Brungart received a counseling entry from Judy Cardin for an alleged failure to follow instructions related to scheduled adherence. (Def.'s Ex. 8, Depo. of Pl.) Adherence is a percentage determined by the amount of time a service representative is *actually* available to take calls divided by the amount of time she is *supposed* to be available to take calls. BellSouth's records indicate that Mrs. Brungart failed to meet her required adherence percentage for the month of January.  At that time, the adherence percentage required of customer service

3

representatives was 94.5%.

In March of 1997, Vicky Capuzzo became Mrs. Brungart's supervisor. On April 14, 1997, Ms. Capuzzo issued a warning regarding Mrs. Brungart's alleged failure to follow instructions relating to scheduled adherence and advising her that she needed to improve her adherence level. (Def.'s Ex. 11, Depo. of Pl.) According to BellSouth's adherence reports, Mrs. Brungart's adherence for the February and March preceding this warning had been below the required adherence percentage.

BellSouth's records indicate that Mrs. Brungart was below the adherence percentage for April as well. As a result, in May of 1997, Ms. Capuzzo suspended Mrs. Brungart for three days. The personnel record dated May 8, 1997, regarding that suspension states that Mrs. Brungart was being suspended for failure to follow instructions relating to scheduled adherence. (Def.'s Ex. 14, Depo. of Pl.) The report also states that Mrs. Brungart was advised that unless she improved her adherence, further disciplinary action would be taken up to and including discharge. Id.

BellSouth's records indicate that Mrs. Brungart did not meet her scheduled adherence for May of 1997. On June 18, 1997, Mrs. Brungart was suspended for five days for failure to follow instructions relating to scheduled adherence. Ms. Capuzzo's report

4

states that Mrs. Brungart was advised that unless she improved her adherence to a satisfactory level, further disciplinary action would be taken, including discharge. (Def.'s Ex. 17, Depo. of Pl.)

From February 1997 through July 1997, Mrs. Brungart filed several grievances through her union. Four of those grievances challenged, among other things, the legitimacy of the discipline she had received for failing to meet her adherence percentages. Specifically, Mrs. Brungart challenged the *accuracy* of her adherence readings because she believed the following:

(1) Her Rockwell recording unit was defective; (2) Ms. Capuzzo tampered with her Rockwell recording unit when she was away from her desk; and (3) Her supervisors would not make corrections to erroneous adherence entries. (See Def.'s Exs. 13, 17, 20, and 21, Depo. of Pl.)

At some time in May or June of 1997, Mrs. Brungart applied for FMLA leave for the purpose of personal knee surgery. The FMLA administrator approved the leave, which was to begin in mid-July.

In early July 1997, Priss Pittman, Ms. Capuzzo's manager, moved to a new job. Calvin Nelson took Ms. Pittman's place and became manager over the Service Rep organization. After receiving the June adherence results, Ms. Capuzzo called Mr. Nelson and informed him that Mrs. Brungart had not met her adherence objective for June.

Mr. Nelson then asked Ms. Capuzzo what, if any, previous disciplinary actions had been brought against Mrs. Brungart for failure to meet adherence.   Ms. Capuzzo informed him that Mrs. Brungart had received counseling, warning, and two suspensions. (Nelson Aff. ¶ 6.)

After receiving this information, Mr. Nelson decided to terminate Mrs. Brungart.   Mrs. Brungart was in fact terminated on July 9, 1997, one day before her scheduled leave for knee surgery was to begin.   Mrs. Brungart was told that she was being terminated for adherence reasons. However, Mr. Nelson did not know at the time that he fired Mrs. Brungart that she was scheduled to take FMLA leave the next day, nor did he know that she had filed any grievances with her union regarding her adherence percentages.   (See Depo. of Nelson, pp. 12-13; 24-25.)

When Mrs. Brungart filed this suit, her grievances against BellSouth were still pending.

## Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."   The

Supreme Court has emphasized that this language means exactly what

it says: there must be a genuine issue of *material* fact, not merely

some factual dispute.   See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-248, 106 S.Ct. 2505, 2510 (emphasis added).   What this

standard means in practice is that "[T]here is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for

a jury to return a verdict for that party." Anderson, 477 U.S. at

249, 106 S.Ct. at 2511 (citing First National Bank of Arizona v.

Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968)).   Because

both parties in this case have filed motions for summary judgment,

this court must look at the evidence offered by both parties and

determine whether a jury could return a verdict for either party

based on that evidence.   If this court determines that a jury could

find for either party, both motions for summary judgment must be

denied.   If, on the other hand, this court finds as a matter of law

that a jury could return a verdict for only one party, that party's

motion for summary judgment must be granted and the other denied.

## COUNT 1: FMLA RETALIATION

Applicable Law

In Title VII cases, the McDonnell Douglas burden shifting

framework applies to claims based on indirect evidence.  This court
has already determined that the <u>McDonnell Douglas</u> burden shifting
framework applies to FMLA retaliation claims, so the court will
apply that framework here to Ms. Brungart's claim.  <u>See</u> <u>Maxwell v.</u>
<u>American Red Cross Blood Services</u>, No. 95-AR-2625-S, 1996 WL 437456
(N.D. Ala. Feb. 27, 1996).  <u>See</u> <u>also</u> <u>Morgan v. Hilti</u>, 108 F.3d 1319
(10th Cir. 1997) and <u>Munizza v. State Farm Mutual Automobile Ins.</u>
<u>Co.</u>, No. 95-35794, 1996 WL 711563 (9th Cir. Dec. 5, 1996)(applying
<u>McDonnell Douglas</u> to FMLA cases).


<u>Prima Facie Case</u>

In order to establish a prima facie case of retaliation under
the FMLA, a plaintiff must show: (1) She exercised rights protected
by the FMLA; (2) She suffered an adverse employment action; and
(3) There is a causal link between these two elements.  <u>See</u> <u>Fleming</u>
<u>v. Boeing Co.</u>, 120 F.3d 242, 248 (11th Cir. 1997) (setting out prima
facie case for retaliation under Title VII).

Here, the first element is met because Mrs. Brungart was
attempting to exercise her right to take an approved FMLA leave for
surgery.  She also satisfies the second element because she was
terminated.  Thus, Mrs. Brungart's prima facie case hinges on
whether she can demonstrate that the exercise of her FMLA rights

*caused* the adverse employment decision.

According to the Eleventh Circuit, temporal proximity between an exercise of a protected right and an adverse employment action is, in and of itself, sufficient to raise an initial inference of causation. In other words, "Where termination closely follows protected activity, it is usually reasonable to infer that the activity was the cause of the adverse employment decision." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 745 (11th Cir. 1996) (citing Bechtel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 934 (11th Cir. 1995)). In this case, Mrs. Brungart can demonstrate temporal proximity because the undisputed facts show that she was scheduled for FMLA leave on July 10, 1997, and that she was terminated on July 9, 1997.

However, this showing is not dispositive because the initial inference of causation established by temporal proximity logically can be rebutted if the decision-maker is *unaware* of the protected activity. This is so because inherent in the claim of retaliation is the concept that one cannot retaliate against something that one has no knowledge of. The Eleventh Circuit is in accord with this reasoning. See, e.g., Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988) (holding that the plaintiff could

9

not prove retaliation where the uncontradicted evidence showed that the decision-makers were unaware of the plaintiff's threat to file an EEOC charge); McCollum v. Bolger, 794 F.2d 602, 610-611 (11th Cir. 1986) (holding that the plaintiff failed to prove a prima facie case of retaliation where the decision-maker had no knowledge of the plaintiff's engaging in protected activity). See also Burger v. Daytona Beach, 72 Fair Empl.Prac.Cas. (BNA) 584, 1996 WL 673144, *9 (M.D. Fla. 1996) (citing McCollum and holding, as a matter of law, that the plaintiff could not prove retaliation where the decision-maker did not know of the plaintiff's participation in Title VII proceedings).

Thus, even if the adverse decision is close in time to the protected activity, the fact that the decision-maker had no knowledge of the protected activity logically precludes the inference that the protected activity *caused* the termination. This is exactly the case here. Ms. Brungart was scheduled to take her leave July 10th. She was terminated only one day before, on July 9th. These facts do raise an initial inference of causation. However, the undisputed evidence shows that Mr. Nelson was not aware that Ms. Brungart was scheduled to take FMLA leave. (Nelson Depo., pp. 12,13.) Thus, in the absence of any evidence to the contrary, this fact effectively rebuts the inference of causation established

merely by temporal proximity.  Therefore, Mrs. Brungart cannot prove her retaliation claim as a matter of law.

The court feels compelled to clear up a major issue of confusion, namely, Mrs. Brungart's adherence ratings.  Both sides have introduced a substantial amount of testimony and documentary evidence regarding Mrs. Brungart's adherence ratings.  The court surmises that this evidence was introduced in anticipation of the second and third steps in the <u>McDonnell Douglas</u> framework; BellSouth has offered Mrs. Brungart's adherence ratings as its legitimate, non-discriminatory reason for her termination, and Mrs. Brungart has attempted to show that this reason is a pretext by offering evidence that her adherence ratings are inaccurate.

While Mrs. Brungart may have a legitimate complaint about the accuracy of her adherence reports, the debate over accuracy misses the point.  Whether the reports are accurate or whether Ms. Brungart's immediate supervisors incorrectly recorded her time is irrelevant when Mrs. Brungart cannot show that Mr. Nelson knew of her impending FMLA leave.  This conclusion is true whether Mrs. Brungart is attempting to establish a prima facie case at stage one of <u>McDonnell Douglas</u> or whether she is attempting to demonstrate pretext at stage three.

Put another way, while Mrs. Brungart might be able to show that

11

she was treated "unfairly" in the general sense of that word, such a showing would be insufficient to establish a claim of retaliation under the FMLA. To prove a claim of retaliation, Mrs. Brungart must show that she was fired *because* of her impending FMLA leave.

Because Mr. Nelson was the decision-maker, and because Mrs. Brungart has offered no evidence to suggest that he knew of her scheduled FMLA leave, she cannot, as a matter of law, prove retaliation.   Mrs. Brungart's motion for summary judgment as to Count One is therefore due to be DENIED, while BellSouth's motion for summary judgment is due to be GRANTED.

## COUNT 2: WRONGFUL DENIAL OF FMLA LEAVE

The FMLA itself does not speak to how or when an employer must notify an employee of her eligibility or ineligibility for FMLA leave.   Rather, Congress delegated that task to the Secretary of Labor.   The only direction the Secretary of Labor received from Congress was to "prescribe such regulations as are necessary to carry out" the FMLA.   29 U.S.C. § 2654.

Acting upon this open-ended directive, the Secretary of Labor promulgated 29 C.F.R. § 825.110(d).   That regulation states that if an employee notifies her employer of the need for FMLA leave less than two business days prior to the commencement of the leave

12

("emergency" leave), that "employee will be deemed eligible if the employer fails to advise the employee that [she] is not eligible within two business days of receiving [her] notice."   In other words, if the employer doesn't tell the employee whether she is eligible within two days of her "emergency" request, the employer will be estopped from denying that employee's eligibility.

Based on this regulation, Mrs. Brungart claims that BellSouth wrongfully denied her December 2, 1996, request for FMLA leave because it did not notify her within two days of her request that she was ineligible. At first blush, it appears that she is correct because the undisputed facts show that BellSouth facially violated § 825.110(d); Mrs. Brungart did not receive notice of her ineligibility until January 16, 1997, more than a month after her initial request.

BellSouth argues that § 825.110(d) is an unconstitutional exercise of the Secretary of Labor's authority to interpret the FMLA and to enact regulations according to that interpretation. Mrs. Brungart responds with the contention that under the standard articulated by the Supreme Court in Chevron U.S.A., Inc. v. Natural Resources Defense, 467 U.S. 837, 104 S.Ct. 2778 (1984), this court should defer to the Secretary's wisdom. Thus, the court must determine whether 29 C.F.R. § 825.110(d) is Constitutional, not

13

whether it is wise.  This is a novel constitutional question in this court and a difficult one.   Striking down an administrative regulation is no ordinary occurrence.  However, for the reasons stated below, this court joins with five other district courts which have considered this very issue and have held § 825.110(d) to be unconstitutional to the extent that it converts ineligible employees into eligible employees, contrary to the express language of the FMLA.

The Chevron Standard

Congress in its unquestioned wisdom has determined that under some circumstances, agencies are better suited to make policy decisions than the courts, and, in some cases, than Congress itself. Thus, the Supreme Court has long deferred to the wisdom of administrative agencies in interpreting Congressional statutes.   In Chevron, the Court set forth the standard for lower courts to apply in determining whether an administrative agency has exceeded its scope of Constitutional authority.  First, a court must ask whether Congressional intent is clear regarding the particular issue at hand.   If so, that intent controls and any administrative regulations to the contrary are invalid.  However, if Congress has not spoken directly to the issue, the court must then ask whether the agency's construction of the statute is permissible.  Although

14

deference is not absolute, the agency's regulation will be struck down at this stage only if it is arbitrary, capricious, or manifestly incompatible with the statutory language.

Application of the Chevron Standard

In applying the first part of Chevron to this case, it is clear that Congress in the FMLA spoke directly to the issue of eligibility. In order to be eligible for FMLA leave, an employee must have worked for at least 1,250 hours in the twelve months preceding the requested leave. 29 U.S.C. § 2611(2)(A)(ii). This is an objective, unequivocal requirement. However, 29 C.F.R. § 825.110(d) states that if an employer does not notify the employee of his or her eligibility within two business days of the employee's "emergency" request, the employer is thereby estopped from denying that employee's eligibility. According to the purported regulation, an employer's inaction effectively converts an otherwise ineligible employee into an eligible one.

As the Eastern District of Virginia pointed out in striking down this regulation:

Under a literal application of the regulation, an employee could work for one day, then inform her employer that she is sick and is leaving. If the employer fails to tell the employee she is ineligible for FMLA leave, the regulation at issue would ostensibly "deem her eligible," even though she has worked merely for one day.

15

Wolke v. Dreadnought Marine, Inc., 954 F.Supp. 1133, 1137 (E.D. Va. 1997). This court agrees with the Wolke court that such a bizarre result is contrary to express Congressional intent. The Secretary of Labor is either a thaumaturgist or a poor reader.

All but one of the other district courts who have considered this question have struck down the regulation on the same basis. See McQuain v. Ebner Furnaces, Inc., 1999 WL 528578, -- F.Supp.2d -- (N.D. Ohio 1999); Dormeyer v. Comerica Bank - Illinois, No. 96 C 4805, 1998 WL 729591 (N.D. Ill. Oct. 14, 1998); Fisher v. State Farm Mutual Automobile Ins. Co., 999 F.Supp. 866 (E.D. Tex. 1998); Seaman v. Downtown Partnership of Baltimore, Inc., 991 F.Supp. 751 (D. Md. 1998). But see Miller v. Defiance Metal Products., Inc., 989 F.Supp. 945 (N.D. Ohio 1997).[1]

Because the regulation directly contradicts the explicit Congressional eligibility requirements, this court holds that 29

---

[1] Although the Eleventh Circuit has not directly confronted the constitutionality of § 825.110(d), this court's decision of today is in accord with the Eleventh Circuit's reasoning in McGregor v. Autozone, Inc., 180 F.3d 1305, (11th Cir. 1999). In that case, the Eleventh Circuit considered the validity of 29 C.F.R. § 825.208. That regulation requires an employer to notify an employee that an absence is being counted as FMLA leave before the employer can count the leave against the twelve week entitlement of the FMLA. The Eleventh Circuit found that this regulation was invalid because it converted the statute's maximum requirement of twelve weeks unpaid leave "into an entitlement of an additional twelve weeks of leave unless the employer specifically and prospectively notifie[d] the employee that she [wa]s using her FMLA leave." Id. at 1308. Thus, the Eleventh Circuit struck down the regulation because it was directly contrary to the express intent of Congress under the FMLA.

16

C.F.R. § 825.110(d) is unconstitutional insofar as it purports to convert "ineligible" employees into "eligible" ones.  As a result, Mrs. Brungart has no claim that BellSouth wrongfully denied her requested FMLA leave in December of 1996 and thus, BellSouth's motion for summary judgment as to Count Two is due to be GRANTED while Mrs. Brungart's motion is due to be DENIED.


### COUNT 3: FAILURE TO PROVIDE NOTICE UNDER THE FMLA

In her complaint, Mrs. Brungart alleges that BellSouth violated the notice provisions of the FMLA.  She does not cite to any specific notice provisions in her complaint.  Rather, she makes the following allegations: (1) "During her tenure with the defendant, the plaintiff did not receive regular notice of her rights and responsibilities under the FMLA." (Pl.'s Compl., ¶ 69); (2) "The plaintiff was never presented with written notice either expressly denying or granting her leave under the FMLA prior to her taking leave in December, 1996 for her mother's heart surgery." (Pl.'s Compl., ¶ 70); and, (3) "In light of the defendant's failure to inform the plaintiff of her rights, the defendant failed to fulfill its obligations as required under the Family and Medical Leave Act." (Pl.'s Compl., ¶ 71.)

After reading Mrs. Brungart's briefs, it is not clear to the

17

court exactly what notice provision she claims BellSouth to have violated.[2]   Mrs. Brungart's memorandum in support of her motion for summary judgment cites 29 C.F.R. § 825.301(b) and (c) in support of her position that she was entitled to "written notice of her rights and duties under the FMLA when she expresse[d] a need for leave under the FMLA."   However, this court does not find such an all-encompassing notice requirement in its reading of those regulations.

For example, § 825.301(b) states that an employer is required to provide written notice of several *specific* expectations and obligations of the employee such as: (1) whether the leave will be counted against the employee's annual FMLA leave entitlement; (2) any requirements for the employee to furnish medical certification of a serious health condition and the consequences for failing to do so; (3) the employee's right to substitute unpaid leave and whether the employer will require that substitution; (4) information regarding health insurance premiums and health benefits; (5) whether the employee must present a fitness for duty certificate; (6) the employee's status as a "key employee"; (7) the

---

[2] BellSouth seems to think that Mrs. Brungart is alleging a violation of the notice posting requirement found in 29 C.F.R. § 825.300. The court does not find such an allegation in plaintiff's pleadings and papers.  However, even if defendant is correct, this court would dismiss for lack of subject matter jurisdiction because it assumes without deciding that the Secretary of Labor alone has standing to bring a cause of action for a violation of 29 U.S.C. §2619(a) and (b).

employee's right to restoration to the same or an equivalent job; and (8) the employee's potential liability for health insurance premiums paid by the employer during her leave if the employee doesn't return to work.

Section 825.301(c) states that the written notice required by paragraph (b) "must be provided to an employee no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave."

While subsection (b) provides a rather long list of specific notices that the employer must provide, neither (b) nor (c) requires that an employer give an employee "regular notice of her rights and responsibilities under the FMLA," which plaintiff complains of not receiving in ¶ 69 of her complaint. Likewise, these sections do not require that employers give employees notice of whether a FMLA request is denied or granted as plaintiff refers to in ¶ 70 of her complaint.[3]

Thus, these sections are not relevant to Mrs. Brungart's allegations in her complaint. Furthermore, even if Mrs. Brungart were alleging that BellSouth violated the **specific** notice provisions

---

[3] To the extent that this portion of Mrs. Brungart's complaint refers to BellSouth's failure to notify her whether she was eligible or ineligible in December of 1996, this issue is addressed by the court's discussion of Count Two.

in subsections (b) and (c), there would be no liability unless she
could show that the violation constituted an "interference with,
restraint of, or denial of an exercise or attempted exercise of
[her] FMLA rights." <u>Minor v. Alacare Home Health Services, Inc.</u>,
No. 98-AR-0477-M (N.D. Ala. 1998) (unpublished opinion).   As a
matter of law, plaintiff could not make that showing here because
any failure to provide the notices required by subsections (b) and
(c) *logically* could not have caused interference with, restraint of,
or denial of her FMLA rights *because she was not eligible for FMLA
leave* at the time she is alleging that she did not receive notice.
In other words, even if BellSouth had provided her with every
possible notice under the FMLA, it would not have changed the fact
that she was ineligible for FMLA leave.   Likewise, even if Mrs.
Brungart were alleging that BellSouth violated some other notice
provision such as § 825.301(a), the same reasoning would preclude
any finding of liability.

Thus, Bellsouth's motion for summary judgment as to Count Three
is due to be GRANTED and Mrs. Brungart's motion is due to be DENIED.


### COUNT 4: RETALIATION UNDER § 301 OF THE LMRA

In Count Four, Mrs. Brungart alleges that BellSouth breached

the collective bargaining agreement in which BellSouth agreed "not to discriminate against, interfere with, restrain or coerce employees because of membership or lawful activity in the Union." She claims that BellSouth violated this provision when it harassed her and, eventually, when it terminated her allegedly for her union activity. Based on the numerous references to her union grievances in Mrs. Brungart's briefs, the court assumes that the filing of those grievances is the union "activity" to which Mrs. Brungart is referring.

The union itself is in the process of handling Mrs. Brungart's grievances, including those grievances regarding BellSouth's alleged breach of the collective bargaining agreement which appear to form the basis of Count Four as referred to above. (See Pl.'s Compl., ¶ 96.) The fact that the union is pursuing Mrs. Brungart's claim that BellSouth breached the collective bargaining agreement precludes this court from hearing Mrs. Brungart's § 301 claim. This is because an employee is required to exhaust her contractual remedies before she may bring a claim under § 301 of the LMRA. As the Supreme Court has explained, "[I]f the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a

21

contract have not been exhausted." <u>Vaca v. Sipes</u>, 386 U.S. 171, 184, 87 S.Ct. 903, 914 (1967).

The Supreme Court noted that there are exceptions to this exhaustion requirement: (1) If the employer has repudiated the contractual remedies or (2) If the union has breached its duty of fair representation in pursuing the claims for the employee. However, neither of these exceptions applies here. Mrs. Brungart has not alleged, and there is no evidence to suggest, that BellSouth has repudiated the remedies in the contract. Furthermore, there is no evidence or allegation that the union has breached its duty of fair representation. In fact, Mrs. Brungart has admitted exactly the opposite in her deposition. For example, she stated that the union has been handling her grievances adequately, that the union has been fair to her, and that to her knowledge, there are no facts to indicate the Union has acted arbitrarily, discriminatorily, or in bad faith with regard to her claims. (Depo. of Pl. at 278.)

Therefore, because neither of the exceptions to the exhaustion requirement applies, this court must dismiss Mrs. Brungart's § 301 claim for lack of subject matter jurisdiction. As a result, BellSouth's motion for summary judgment as to Count Four is due to be GRANTED and Mrs. Brungart's motion is due to be DENIED.

22

## CONCLUSION

A separate appropriate order will be entered.


DONE this *15* day of September, 1999.


_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

23